United States District Court
Southern District of Texas
**ENTERED**
April 27, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

GENE GERARD BASLER,                    §
                                       §
    *Plaintiff,*                      §
                                       §
v.                                     §      CIVIL ACTION H-15-2254
                                       §
DEPUTY ERIK LANCE BARRON, et al.,      §
                                       §
    *Defendants.*                     §
                                       §

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Deputy Erik Lance Barron's ("Deputy Barron") motion to dismiss (Dkt. 18) plaintiff Gene Gerard Basler's second amended complaint ("Dkt. 16").[1]  Having considered the motion, response, and applicable law, the court is of the opinion that Deputy Barron's motion to dismiss should be DENIED in part and GRANTED in part.

## I. BACKGROUND

Basler alleges that his constitutional rights were violated during an incident that transpired on June 20, 2014.  Dkt. 16 at 4.  Basler contends that at approximately 4:55 p.m., he was riding his bicycle east on Grant Road and stopped at the intersection of Grant Road and Tomball Parkway.  *Id*. He witnessed Deputy Barron step out in front of a car traveling west on Tomball Parkway and almost get hit.  *Id*.  Basler observed the car brake, swerve, strike a road flare, and pull over.  *Id.*  Basler alleges that Deputy Barron made abusive, frightening, unprofessional, and inappropriate shouts and gestures towards the driver of the car after the near collision.  *Id.* at 5.  Basler contends that in fear

---

[1]Deputy Barron previously filed a motion to dismiss (Dkt. 14) Basler's first amended complaint. Dkt. 7.  The previously filed motion to dismiss is superseded and rendered moot by Barron's subsequent motion to dismiss.  Dkt. 18.  Therefore, the previously filed motion to dismiss (Dkt. 14) is DENIED.

for the driver's safety, he began recording Deputy Barron with his iPhone's digital recorder.  *Id.* at 6.  Basler claims that when Deputy Barron noticed Basler recording, he shouted at Basler to leave and "move on" or he would be arrested.  *Id.* at 6.  Basler states that he did not leave but instead asked Deputy Barron why he would be arrested if he was standing at a safe distance away and not interfering with the investigation.  *Id.*  Basler alleges that Deputy Barron sprinted across the roadway to Basler, seized him by his chest and shirt, lifted him off his bicycle, and slammed his face into the sidewalk causing bruising, pain, soreness, and stiffness to his face and chest.  *Id.* at 7.  Basler further alleges that Deputy Barron put his knee into Basler's back and wrestled his iPhone from his hand to stop the recording.  *Id.*  Deputy Barron subsequently handcuffed Basler and forced him into the police car.  *Id.*  Basler claims that Deputy Barron taunted him by "wagg[ing] Basler's iPhone in front of Basler's face" and telling him "I got your phone now and I'm going to enter it into evidence!  Name and badge number?  I don't have to give you my name and badge number!  You are nothing to me.  You're less than nothing to me!"  *Id.* at 7–8.  Basler was subsequently charged with Interference with Public Duties under § 38.15 of the Texas Penal Code.  *Id.* at 8.  Basler was detained in Harris County Jail from June 20, 2014, until June 22, 2014.  *Id.* at 9.  All criminal charges against Basler were dropped on July 23, 2015.  *Id.* at 9.

On December 31, 2015, Basler filed his second amended complaint (Dkt. 16) against Deputy Barron in his individual capacity, asserting four separate claims under 42 U.S.C. § 1983, one claim under the Privacy Protection Act (42 U.S.C. § 2000aa), and various state law intentional torts. Dkt. 16 at 9–12.  Deputy Barron filed a motion to dismiss Basler's § 1983 claims and Privacy Protection Act claim, arguing that he had probable cause to arrest Basler and is therefore entitled to qualified immunity. Dkt. 18 at 3.  Deputy Barron also argues that the election-of-remedies provision

of the Texas Tort Claims Act requires that all state law intentional tort claims against him be dismissed. *Id.* at 11.

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679. Though a defendant can seek dismissal on an affirmative defense, dismissal will be granted only if the defense is "established by the face of the complaint." *Janvey v. Suarez*, 978 F. Supp. 2d 685, 702 (N.D. Tex. 2013). For example, a statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## III. ANALYSIS

### A. Judicial Notice of the Magistrate Court's Order

Deputy Barron requests this court to take judicial notice of a court order in which a magistrate judge found probable cause for Basler's arrest. Dkt. 18 at 4–5; Dkt. 18-1. Basler in turn, moves to strike the order as improper external evidence. Dkt. 21 at 2. Judicial notice applies to indisputable facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The court may take judicial notice of a court order. *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (taking judicial notice of state court orders). Generally, when considering a motion to dismiss for failure to state a claim, a district court must limit itself to the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, federal courts are permitted to refer to matters of public record when deciding a Rule 12(b)(6) motion to dismiss. *Davis*, 70 F.3d at 372 (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). Because the order is a public record, the court takes judicial notice of the existence of the court order. However, judicial notice of the court order does not equate to judicial notice of the existence of probable cause. Indeed, Basler disputes the facts that support the magistrate judge's probable cause finding. Basler's assertion that Deputy Barron "manufactur[ed] probable cause" is central to several of Basler's claims against Deputy Barron. Dkt. 16 at 11–12. Because judicially noted facts must not be subject to reasonable dispute, the court cannot judicially note that there was probable cause for Basler's arrest as a matter of law. Fed. R. Evid. 201(b).

**B. § 1983 Claims**

For a plaintiff to state a claim under § 1983 he "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005). State actors are subject to civil liability when, "under color of any statute, ordinance, regulation, custom, or usage, of any State," that official subjects, or causes to be subjected, a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. Public officials sued in their personal capacity for monetary damages under § 1983 may be able to assert a common-law defense of absolute or qualified immunity from suit. *Imbler v. Pachtman*, 424 U.S. 409, 418–19, 96 S. Ct. 984 (1976). Public officials sued in their official capacity are protected by the Eleventh Amendment, which bars suits by private citizens against a state in federal court, unless the Eleventh Amendment is shown not to apply or the *Ex Parte Young* exception applies. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

Basler asserts four causes of action against Deputy Barron under 42 U.S.C. § 1983: (1) unreasonable seizure in violation of the Fourth and Fourteenth Amendments; (2) excessive force in violation of the Fourth Amendment; (3) violation of his right to freedom of speech under the First Amendment; and (4) malicious prosecution in violation of the Fourth Amendment. Dkt. 16 at 9–11.

**C. Qualified Immunity**

Deputy Barron asserts that all of Basler's § 1983 claims fail as a matter of law because Basler failed to allege facts that waive Deputy Barron's qualified immunity. Dkt. 18 at 3 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011)). Qualified immunity shields federal and state officials from civil damages liability under § 1983 in their individual capacities unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the

right was clearly established at the time of the challenged conduct." *Ashcroft*, 131 S. Ct. at 2077; *see also Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013).  When an official asserts qualified immunity, the first step is to identify the allegedly infringed constitutional right. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989).

> If the allegations do not establish a violation of a constitutional right, the [official] is entitled to qualified immunity. . . If the allegations could make out a constitutional violation, we must ask whether the right was clearly established—that is, whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted. . . . If an [official] makes a reasonable mistake as to what the law requires, [he] is entitled to immunity.

*Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and internal quotation marks omitted).

The conduct need not be prohibited by a specific judicial mandate; rather, the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations." *Atteberry*, 430 F.3d at 257.  Here, Basler alleges that Deputy Barron infringed upon his First and Fourth Amendment rights. Dkt. 16 at 9–10.  Baser claims that Deputy Barron violated his First Amendment right to record the police without interfering in police activity.  Dkt. 21 at 8.  It is well established that the gathering of information about government affairs or matters of public concern—including recording police activity—is protected by the First Amendment. *E.g.*, *Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992) (assuming the plaintiff's allegations were true, the court held that arresting the plaintiff for photographing a police raid where he did not interfere violated the plaintiff's First Amendment rights); *Shillingford v. Holmes*, 634 F.2d 263, 264, 266 (5th Cir. 1981) (stating that police officer's "unprovoked and unjustified" assault of plaintiff who "was photographing what the policeman did not want to be memorialized" and "was not involved in the arrest incident and did not interfere with the police in any fashion" established a deprivation of

6

constitutional rights), *abrogated on other grounds by Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993).

Basler contends that Deputy Barron violated his Fourth Amendment rights by arresting him and seizing his property without probable cause and by using excessive force.  Dkt. 16 at 9–11. Deputy Barron's alleged probable cause to arrest Basler—which the magistrate judge subsequently found based on Deputy Barron's representations—was Basler's interference with the duties of a public servant.  Dkt. 18 at 4;  Dkt. 18-1.  Because Basler's constitutional claims arise out of an allegedly unlawful arrest, meeting the elements of his § 1983 claims implicitly requires him to show an absence of probable cause to support his arrest.  *Russell v. Altom*, 546 F. App'x 432, 436–437 (5th Cir. 2013);  *Buehler v. City of Austin*, No. A-13-CV-1100-ML, 2015 WL 737031, at *9 (W.D. Tex. Feb. 20, 2015).

Deputy Barron cites *Cuadra v. Houston Independent School District* to support his contention that a magistrate court order finding probable cause is conclusive evidence that probable cause existed.  Dkt. 18 at 5 (citing 626 F.3d 808, 813 (5th Cir. 2010)).  In *Cuadra*, the court held that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest."  626 F.3d at 813 (internal quotations marks omitted).  However, "the chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.'"  *Id.* at 813 (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).  "The chain of causation is broken only where all the facts are presented to the grand jury or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary."  *Id.*

7

Basler alleges that Deputy Barron's malicious motives caused him to withhold key facts from the magistrate judge. Dkt. 16 at 9–12. For example, Basler claims that Deputy Barron had to shout to be heard and had to sprint down the road to reach and arrest Basler. Dkt. 21 at 4. Basler contends that had the magistrate judge heard these facts, the judge would have found that Basler was at a safe distance away from Deputy Barron and that he therefore did not have no probable cause to arrest Basler. *Id*.

Deputy Barron contends that these allegations are not sufficient to prove that the magistrate's deliberations were tainted. Dkt. 18 at 5. Although the court in *Cuadra* held that the plaintiff's allegations, without more, were insufficient to withstand summary judgment, the facts in *Cuadra* are distinguishable. 626 F.3d 808 at 813. In that case, the plaintiff admitted to part of the alleged wrongdoing and both a district attorney and two separate grand juries found probable cause for arrest. *Id*. Here, Basler alleges specific, material facts that Deputy Barron intentionally withheld from the magistrate. Assuming these allegations are true, the magistrate judge's finding of probable cause would not be entitled to a presumption of validity. *U.S. v. Kolodziej*, 706 F.2d 590, 598 (5th Cir. 1983) (finding that a magistrate judge's determination of probable cause was not entitled to a presumption of validity when "the magistrate never considered the affidavit purged of its tainted material"). Accordingly, Deputy Barron's motion to dismiss Basler's § 1983 claims on the basis of qualified immunity is DENIED.

### D. Excessive Force Claim

In addition to the qualified immunity defense, Deputy Barron moves to dismiss Basler's excessive force claim on the ground that insufficient force was used against Basler. Dkt. 18 at 7. To establish an excessive use of force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was

objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citation omitted).  The injury must be more than a de minimis injury and must be evaluated in the context that the force was used. *Mitchell v. Baggett*, No. 4:13-CV-2221, 2014 WL 2973627, at *2 (S.D. Tex. July 2, 2014) (Hoyt, J.).  In an excessive force claim arising under the Fourth Amendment, the reasonableness of the officer's actions requires careful attention to the facts and circumstances of each particular case, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Basler contends that he was stationary and straddling his bicycle with one hand on the handlebars and his other hand on his cell phone when Deputy Barron sprinted over, grabbed his shirt and chest, lifted him off his bike and slammed him onto the sidewalk.  Dkt. 16 at 7.  Basler further alleges that Deputy Barron put his knee into Basler's back and wrestled Basler's iPhone from his hand in order to stop the recording.  *Id.*  Deputy Barron's conduct allegedly resulted in bruising, pain, soreness, and stiffness to Basler's face and chest.  *Id.*  Basler contends that this degree of force was unreasonable because the severity of his alleged crime was not proportional to the force used against him:  he was not posing a threat, exhibiting a weapon, or attempting to flee.  *Id.*  The court finds that Basler's complaint sufficiently alleges facts to support his claim that the force used by Deputy Barron was objectively unreasonable.

Deputy Barron also asserts that the injuries alleged by Basler are de minimis.  Dkt. 18 at 6. However, a showing of significant injury is no longer required in an excessive force claim.  *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004) (rejecting the "significant injury" requirement for Fourth Amendment excessive force claims and holding that a plaintiff need only allege "an injury"); *Glenn*, 242 F.3d at 314 ("Although a showing of significant injury is no longer required

in the context of an excessive force claim, we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.") (internal quotations marks omitted).  Deputy Barron compares Basler's alleged injuries to cases where courts have held that handcuffing a suspect too tightly, without more, does not amount to excessive force.  *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010); *see also Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (holding that minor, incidental injuries that occur in connection with the use of handcuffs during arrest do not give rise to a constitutional claim for excessive force).  Basler's case, however, is distinguishable from these cases because Basler's alleged injuries were not incidental to being handcuffed.  Dkt. 21 at 7. Basler alleges that his injuries—bruising, pain, soreness, and stiffness to his face and chest—were caused by Deputy Barron's actions prior to arrest.  Dkt. 16 at 7.  Basler alleges that Deputy Barron grabbed Basler's shirt and chest, lifted him off of his bike, slammed him onto the sidewalk, shoved his face into the sidewalk, and placed his knee into Basler's back.  *Id*.  The court finds that these facts are sufficient to show that Basler's alleged injuries are not de minimis.

### E. Privacy Protection Act ("PPA") Claim

Basler asserts a cause of action for the seizure/destruction of journalistic work product in violation of 42 U.S.C. § 2000aa.  Dkt. 16 at 11.  Basler claims that Deputy Barron wrongfully seized and partially destroyed Basler's iPhone because he believed that Basler would disseminate the recording by broadcast or other similar form of public communication.  *Id*.  Deputy Barron contends that because he suspected Basler of committing a crime (i.e., failure to comply with a lawful command of a peace officer) and allegedly had probable cause to that effect, Basler's PPA claim should be dismissed.  Dkt. 18 at 8.  The PPA states that "this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if—there is probable cause to believe that the person possessing such

10

materials has committed or is committing the criminal offense to which the materials relate."  42

U.S.C.A. § 2000aa (West).  However, for the reasons stated above, Basler's pleadings raise factual

issues as to whether Deputy Barron had probable cause to believe Basler was committing a crime.

Accordingly, Basler's PPA claim should not be dismissed at this stage of the proceedings.

### F. Texas Constitution Claims

Basler has abandoned his claims alleging violations of the Texas Constitution.[2]

### G. State Law Intentional Tort Claims

Deputy Barron correctly asserts that Basler cannot seek relief from Deputy Barron on his state

law intentional tort claims because he is barred by the election-of-remedies provision of the Texas

Torts Claims Act ("TTCA").  Dkt. 18 at 9.  The TTCA provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2003).

"Application of the TTCA's election-of-remedies provision requires a determination as to

'whether an employee acted independently and is thus solely liable, or acted within the general scope

of his or her employment such that the governmental unit is vicariously liable.'"  *Alexander v. Walker*,

435 S.W.3d 789, 789–90 (Tex. 2014) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253

S.W.3d 653, 657 (Tex. 2008)).  The TTCA mandates this determination in order to reduce the

resources that the government and its employees must use in defending redundant litigation and

---

[2]Dkt. 21 at 10 (stating that "Plaintiff's claims pursuant to the Texas Constitution . . . were voluntarily dismissed in his current complaint").

alternative theories of recovery.  *Id*.  To that end, the statute compels "dismissal of government employees when suit should have been brought against the government."  *Id*. (quoting *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 355 (Tex. 2013)).

In *Alexander*, the plaintiff sued two police officers for a series of state law claims all stemming from the officers' conduct incident to the plaintiff's arrest.  *Id*. at 789.  Because the plaintiff did not allege any independent actions by the officers, the court found that the officers acted within their official capacity only and dismissed them from the suit under the election-of-remedies provision.  *Id*. at 792.

Basler's seconded amended complaint purports to assert only negligence claims against Harris County.  Dkt. 16 at 13–16.  On the other hand, the complaint purports to assert Basler's intentional torts claims (i.e., assault, unlawful restraint, malicious prosecution, and conversion) solely against Deputy Barron.  *Id*. at 12.  Moreover, the face of the complaint states that Deputy Barron is being sued "in his individual capacity."  *Id*. at 1.  However, Basler fails to allege that Deputy Barron acted independently.  On the contrary, Basler alleges that "at all times relevant to this complaint . . . [Deputy] Barron acted within the course and scope of [his] employment or agency as [an] investigative and law enforcement official."  *Id*. at 3.  Accordingly, the court finds that Deputy Barron's alleged conduct falls within the scope of his employment.

Moreover, the court finds that Basler's intentional tort claims "could have been brought under this chapter against the governmental unit."  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).  In *Franka,* the Texas Supreme Court held that "for section 101.106(f), 'suit could have been brought' under the Act against the government regardless of whether the Act waives immunity from suit."  *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011);  *see also Alexander*, 435 S.W.3d at 792

12

(finding that, based on the holding in *Franka*, the plaintiff's intentional tort claims—including assault, false arrest, and malicious prosecution—could have been brought under the TTCA against the government).  Therefore, because Basler's intentional tort claims against Deputy Barron were based on conduct within the general scope of his employment and could have been brought under the TTCA against Harris County, these claims are considered to be against Deputy Barron in his official capacity only.  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).  As the Texas Supreme Court has held, "a suit against an employee in his official capacity is *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit."  *Ngakoue*, 408 S.W.3d at 357.

In response, Basler argues that this court's supplemental jurisdiction over Basler's state law claims renders Deputy Barron's TTCA defense inapplicable.  Dkt. 21 at 10 (citing 28 U.S.C. § 1367).  However, Basler fails to explain why this court's supplemental jurisdiction should deprive Deputy Barron of the right to assert a defense (recognized under Texas law) to Basler's state law claims.  Accordingly, Deputy Barron is entitled to dismissal of Basler's state law intentional tort claims against him pursuant to § 101.106(f).

## IV. CONCLUSION

Deputy Barron's motion to dismiss is GRANTED in part and DENIED in part.  The court GRANTS the motion to dismiss Basler's state law intentional tort claims against Deputy Barron. The motion is DENIED as to Basler's remaining claims.

Signed at Houston, Texas on April 27, 2016.

Gray H. Miller
United States District Judge

13