# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GENE GERALD BASLER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2254 |
| | § | |
| DEPUTY ERIK LANCE BARRON, *et. al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are three motions for summary judgment: (1) defendant Deputy Erik Barron's motion for summary judgment (Dkt. 42); (2) defendants Harris County and Sheriff Ron Hickman's (collectively "Harris County") motion for summary judgment (Dkt. 43); and (3) plaintiff Gene Gerald Basler's cross motion for partial summary judgment (Dkt. 44). Having considered the motions, responses, replies, record evidence, and applicable law, the court is of the opinion that (1) Deputy Barron's motion for summary judgment should be DENIED; (2) Harris County's motion for summary judgment should be GRANTED; and (3) Basler's motion for partial summary judgment should be DENIED.

## I. BACKGROUND

Basler alleges that his civil rights were violated in conjunction with his arrest on June 20, 2014. Dkt. 16. On that afternoon, Deputy Barron, a deputy sheriff for Harris County, set up a static traffic stop in the U-turn area of the 18500 Tomball Parkway at Grant Road in Harris County. Dkt. 42 at 2.

Basler claims he witnessed Deputy Barron exhibit abusive behavior toward a motorist, later identified as Vinny Muanza. Dkt. 64, Ex. 3 (Basler Dep.) at 97. Deputy Barron stopped Muanza

for driving without a seatbelt.  *Id.*  Further, Basler claims that, because he was fearful for Muanza's safety, he began recording the incident with his cell phone.  *Id.*  The parties and Muanza, as a witness, disagree on precisely how far Basler was positioned from the traffic stop while recording, but it was somewhere between approximately fifteen and fifty feet.  *See* Dkt 42, Ex. B (Barron Dep.) at 67, Ex. C (Muanza Dep.) at 12, Ex. D (Basler Dep.) at 60; Dkt. 44, Ex. 4 (Tisdale Dep.) at 16, Ex. 5.  For the purposes of his motion for partial summary judgment only, Basler represents that the distance between himself and Deputy Barron was at least fifteen feet.  Dkt. 44 at 6.

It is a matter of undisputed fact that Deputy Barron ordered Basler to move further away from the traffic stop and Basler refused the order.  Dkt. 42, Ex. D (Basler Dep.) at 6–7.  Deputy Barron gave this order at least twice, and possibly up to four times, before approaching Basler.  *Id.*  Deputy Barron arrested Basler by removing him from his bicycle, forcing him flat on the ground, placing his knee on Basler's back, and handcuffing him.  Dkt. 42, Ex. B (Barron Dep.) at 37, Ex. D (Basler Dep.) at 13–14.  Deputy Barron also confiscated Basler's cell phone.  Dkt. 42 at 4.

Deputy Barron claims he arrested Basler for interfering with his official duties by standing too close and failing to comply with his commands.  Dkt. 42, Ex. B (Barron Dep.) at 69–70.  Deputy Barron also claims he  had other grounds to arrest Basler, but that he did not charge Basler for those offenses.  *Id.*  Basler alleges that the reason Deputy Barron arrested him was either to prevent his filming of the traffic stop or in retaliation for his filming.  Dkt. 16.

On August 5, 2015, Basler filed a complaint against the defendants, and then amended that complaint on October 15, 2015.  Dkt. 16.  On December 21, 2015, Deputy Barron filed a Rule 12(b)(6) motion to dismiss the claims against him.  Dkt. 14.  The court dismissed Basler's state law claims, but retained Basler's claims against Deputy Barron under 42 U.S.C. § 1983 for unreasonable seizure, excessive force, violation of freedom of speech, and  malicious prosecution, and  under the

Privacy Protection Act (42 U.S.C. § 2000aa) for the destruction of a journalistic work product.  Dkt. 24.

Deputy Barron now moves for summary judgment on all the claims against him.  Dkt. 42. Harris County also moves for summary judgment on all the claims against it.  Dkt. 43.  Basler responded to both motions for summary judgment, and the defendants replied jointly.  Dkts. 64, 65. Basler moves for partial summary judgment against Deputy Barron for all Basler's claims against Deputy Barron except for violation of freedom of speech and against Harris County for all Basler's claims against Harris County except for negligent retention.  Dkt. 44.  The defendants responded jointly; Basler replied to each defendant separately.[1]  Dkts. 54, 62, 67.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

---

[1] Basler filed a motion *in limine* to exclude Harris County's expert Kenneth Brady.  Dkt. 36.  The court need not rule on this motion because the court has not relied on evidence from Brady's deposition while making any determinations in these pending motions for summary judgment.

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id.*  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas, Tex*., 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind*. *Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *TIG Ins. Co. v. Sedgwick*

4

*James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof

based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869,

872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

In this case, the parties have filed cross motions for summary judgment.  *See* Dkts. 42, 43,

44.  Where the parties file cross motions for summary judgment on an issue, the court must "review

each party's motion independently, viewing the evidence and inferences in the light most favorable

to the non-moving party."  *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir.

2001).

### III. BASLER'S § 1983 CLAIMS AGAINST DEPUTY BARRON

Basler asserts four causes of action against Deputy Barron under 42 U.S.C. § 1983: (1)

unreasonable seizure in violation of the Fourth and Fourteenth Amendments; (2) excessive force in

violation of the Fourth Amendment; (3) violation of the right to freedom of speech under the First

Amendment; and (4) malicious prosecution in violation of the Fourth Amendment.  Dkt. 16 at 9–11.

Deputy Barron moves for summary judgment both on the grounds that Basler has no

evidence for the required elements for each of his claims and also with evidence that negates the

existence of Basler's claims.  Dkt. 42 at 5.  Basler moves for partial summary judgment on three of

these claims: unreasonable seizure, excessive force, and malicious prosecution.  Dkt. 44.  Basler

argues that there is no dispute of material facts in establishing his claims that he was deprived of his

Constitutional rights.  *Id.* at 7.

For a plaintiff to state a claim under § 1983 he "must first show a violation of the

Constitution or of federal law, and then show that the violation was committed by someone acting

under color of state law."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

5

The parties agree that Deputy Barron was acting under the color of state law in his duties as a peace officer when he arrested Basler.  Dkt. 42 at 6; Ex. B (Barron Dep.) at 11.  Therefore, the court will consider the cross motions for summary judgment with respect to the arguments and evidence provided by each party with respect to Basler's allegation that Deputy Barron committed a violation of his Constitutional liberties.

## A.     Probable Cause and Unreasonable Seizure

Basler's first claim is that Deputy Barron violated Basler's Fourth Amendment rights by arresting him and seizing his cell phone without probable cause.  Dkt. 16 at 9–11.  The Fourth Amendment offers protection against an unreasonable seizure during an arrest.  *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  "[The] arrest must be based on probable cause, which exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  *Id.*  (quoting *Spiller v. Tex.* City, 130 F.3d 162, 165 (5th Cir.1997)).  When the arrest is supported by probable cause, "'the government's interests in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable' under the Fourth Amendment."  *Id.*  (quoting *Atwater v. City of Lago*, 195 F.3d 242, 244 (5th Cir1999)).

The determination of probable cause is also applicable to proving the elements of malicious prosecution and excessive force.  Because these claims arise out of an allegedly unlawful arrest, meeting the elements of the § 1983 claims implicitly requires Basler to show an absence of probable cause during his arrest.  *Russell v. Altom*, 546 F. App'x 432, 436–437 (5th Cir. 2013); *Buehler v. City of Austin*, No. A-13-CV-1100-ML, 2015 WL 737031, at *9 (W.D. Tex. Feb. 20, 2015).  Deputy Barron argues that there was probable cause for the arrest, and the court should find probable cause

by either by taking judicial notice or because there is no dispute over the material facts which establish probable cause.  Dkt. 42.  The court disagrees.

### 1. Magistrate's Determination of Probable Cause

Deputy Barron requests, again, that this court take judicial notice of the probable cause finding of the magistrate judge, in light of the evidence in his motion for summary judgment. Dkt. 42 at 12; *see also* Dkt. 24 (declining to take judicial notice of probable cause in a motion to dismiss in this same action).  The court observed in its order denying Deputy Barron's motion for dismissal that Basler's assertion that Deputy Barron "manufactur[ed] probable cause" is central to several of Basler's claims against him.  Dkt. 16 at 11–12.  Deputy Barron's alleged probable cause to arrest Basler, which the magistrate judge subsequently found based on Deputy Barron's representations, was that Basler was interfering with the duties of a public servant.  Dkt. 24.  This court opined, when denying a Deputy Barron's motion to dismiss: "Here, Basler alleges specific, material facts that Deputy Barron intentionally withheld from the magistrate.  Assuming these allegations are true, the magistrate judge's finding of probable cause would not be entitled to a presumption of validity."  Dkt. 24.  Neither party presented any evidence with their motions for summary judgment to negate this finding of the court.  Therefore, the court renews its conclusion that "[b]ecause judicially noted  facts must not be subject to reasonable dispute, the court cannot judicially note that there was probable cause for Basler's arrest as a matter of law."  Dkt. 24 (citing to Fed. R. Evid. 201(b)).

### 2. Probable Cause Analysis

Deputy Barron's substantive argument is that Basler's arrest was reasonable because he had probable cause to believe that Basler was committing the offense of interference with the duties of a peace officer.  Dkt. 42, Ex. B (Barron Dep.) at 72.  This offense occurs when "the person with

criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposted or granted by law."  Tex. Penal Code § 38.15(a)(1).

Basler and Deputy Barron offer alternative stories about Basler's initial approach to the traffic stop, including allegations that Basler may have, either reasonably or unreasonably, verbally confronted Deputy Barron.  Dkt. 42, Ex. C (Muanza Dep.) at 16, Ex. D (Basler Dep.) at 97. However, the stories themselves are not material to a determination that Deputy Barron had probable cause to arrest Basler.  *See Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (finding that "yelling" and "screaming" at a police officer is not evidence that a plaintiff physically obstructed deputies or enough evidence to give rise to probable cause for an arrest for interference with public duties).

Deputy Barron alleges that probable cause for the arrest arose because Basler was creating a distraction and posed a safety hazard by his proximity to the traffic stop.  Dkt. 42, Ex. B (Barron Dep.) at 39-40, 44, Ex. D (Basler Dep.) at 34.  That is why, Deputy Barron claims, he ordered Basler to move away, that he made the order multiple times, and each time Basler refused the order.  *Id.*

"For a summary judgment . . . the court must not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes."  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  If the evidence in the record "is such that a reasonable jury drawing all inferences in favor of the non-moving party could arrive at a verdict in that party's favor, the court must deny the defendants' motion."  *Id.*

With respect to Deputy Barron's motion for summary judgment, the court views the evidence in the light more favorable to Basler, despite any credibility and weight of evidence favoring Deputy Barron's version of these events.  Here, Basler provides competing evidence that he was far enough

away from the traffic stop to create enough spacing for safety and that Deputy Barron was motivated not by safety, but by a desire to stop Basler from filming. Dkt. 64, Ex. 4 (Tisdale Dep.) at 62. Deputy Barron was undisputedly aware that Basler was filming him, and it is a matter of his credibility as to whether the arrest was actually for safety or if it was because of the filming. Dkt. 64, Ex. 3 (Barron Dep.) at 10. Considering the sum of this evidence in the light most favorable to Basler — that Basler was at least fifteen feet and possibly much farther from Deputy Barron, that Deputy Barron was acting with a malicious motive against Basler's filming, and that Deputy Barron's affidavit in support of probable cause did not include that Basler was far enough away that he had to yell to communicate with Basler — the court comes to the same conclusion as when it considered the motion to dismiss (Dkt. 24). There remains a dispute of material fact as to whether there was probable cause for the arrest. Therefore, Deputy Barron's motion for summary judgment on the unreasonable seizure claim is DENIED.

With respect to Basler's motion for summary judgment, Basler argues that Deputy Barron failed to articulate Basler's *mens rea* of criminal negligence, which is required for the crime of interference with the duties of a peace officer. Dkt. 44 at 8–9. Without *mens rea*, Basler argues, Deputy Barron had no reason to believe Basler was violating the law. *Id.* Deputy Barron argues that he perceived that Basler's *mens rea* was to commit an intentional violation by disobeying his orders, which is a higher standard of *mens rea* than mere criminal negligence. Dkt. 42, Ex. B (Barron Dep.) at 94. Basler testified that he intentionally disobeyed Deputy Barron's order to back away, so there is no dispute of material fact here. Dkt. 42, Ex. D (Basler Dep.) at 14. The court agrees that Deputy Barron properly articulated Basler's intentional *mens rea* sufficiently to establish this element of the offense.

The remaining offered evidence, when viewed in the light most favorable to Deputy Barron, supports the conclusion that he had probable cause to arrest Basler because Basler failed to move away after multiple orders and presented a safety hazard while Deputy Barron was conducting his official duties at the traffic stop. Therefore, Basler's motion for summary judgment on the unreasonable seizure claim is DENIED.

## B.    Excessive Force

Second, Basler claims that Deputy Barron used excessive force when he pulled Basler from his bicycle, held him face down to the ground, and handcuffed him. Dkt. 16. To establish an excessive use of force claim, Basler must show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn*, 242 F.3d at 314 (citation omitted). The injury must be more than a de minimis injury and must be evaluated in the context that the force was used. *Mitchell v. Baggett*, No. 4:13-CV-2221, 2014 WL 2973627, at *2 (S.D. Tex. July 2, 2014) (Hoyt, J.). In determining this issue, the court inquires whether reasonable force was used, when viewed from the perspective of an officer on the scene and taking into account the totality of the circumstances involved. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008).

In an excessive force claim arising under the Fourth Amendment, the reasonableness of the officer's actions requires careful attention to the facts and circumstances of each particular case, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989); *see, e.g.*, *Glenn*, 242 F.3d at 314 (finding officer placement of handcuffs too tightly on a wrist did not amount to excessive force); *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004) (finding that psychological injuries may

not give rise to an excessive force claim when properly balanced against the objective reasonableness of the use of force).

For Deputy Barron to succeed on his motion for summary judgment, he must show that Basler failed to provide evidence for at least one of the elements of the claim when viewed in the light most favorable to Basler.  There is no dispute that Deputy Barron used force in the arrest, pulling Basler off the bike, pinning him to the ground, handcuffing him, and potentially injuring him with bruises. Dkt. 42, Ex. B (Barron Dep.) at 44.

Therefore, the court turns to whether Basler provided evidence required to establish an issue of material fact as two of the remaining elements of this cause of action: that the force was both excessive to the need and was objectively unreasonable.  On one hand, Basler attempted to flee. Dkt. 44, Ex. 2 (Basler Dep.) at 11, Ex. 1 (Barron Dep.) at 21, 46–48.  Also, there is no dispute that Basler met the force of his arrest with at least some resistance.  Dkt. 44, Ex. 2 (Basler Dep.) at 169–170.  On the other hand, both parties agree that Basler was not carrying any weapons.  Dkt. 42, Ex. B (Barron Dep.) at 44.  Also, the alleged crime of interfering with a public servant is not a particularly severe one.  Basler even provided an expert who agreed that in these circumstances, the use of force is reasonable, if there had been probable cause. Dkt. 64, Ex. 5 (Tindale Dep.) at 70.  However, the expert opines, the corollary is also true, that the use of the force may be objectively unreasonable in the absence of probable cause.  *Id*.

Here, the court has already determined that there remain questions of material fact as to whether there was probable cause for the arrest.  If those facts are construed in the light most favorable to Basler to find no probable cause, then Deputy Barron's use of force was likely unnecessary and objectively unreasonable.  Therefore, Deputy Barron's motion for summary judgment on the excessive force claim is DENIED.  Likewise, with respect to Basler's motion for

summary judgment, if these same facts are construed in the light most favorable to Deputy Barron for a finding of probable cause, Deputy Barron has provided substantial evidence, including the testimony of Basler's expert, that his use of force was necessary and reasonable under the circumstances, in the presence of probable cause.  Dkt. 64, Ex. 5 (Tindale Dep.) at 70.  Therefore, Basler's motion for summary judgment on the excessive force claim is also DENIED.

## C.    Violation of the Right to Freedom of Speech

Third, Basler claims that Deputy Barron violated his right to freedom of speech.  Deputy Barron has moved for summary judgment Basler's free speech claims.  Dkt. 42.  On this claim, Basler has not filed a cross motion for summary judgment.  To survive a summary judgment motion on a First Amendment claim, Basler must produce sufficient evidence that "(1) [he] was 'engaged in constitutionally protected activity;' (2) [Basler's] actions caused [him] 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;' and (3) [Deputy Barron's] adverse actions 'were substantially motivated against [Basler's] exercise of constitutionally protected conduct.'" *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).  Deputy Barron argues that  (1) Basler has not provided any evidence that his free speech activity of filming was the cause of his arrest, and (2) Basler's filming was not a constitutionally protected activity.  Dkt. 42.

There is no dispute that Basler appeared to be filming Deputy Barron's traffic stop, that Deputy Barron ordered Basler to move away because he was "too close," and that Deputy Barron never directly ordered Basler to stop filming.  Dkt. 42, Ex. B (Barron Dep.) at 93, Ex. C (Muanza Dep.) at 15–16, Ex. D (Basler Dep.) at 6–7.  However, the court finds there is still a disputed material fact as to Deputy Barron's motivation to make this order.  Deputy Barron claims that Basler was "too close," which posed a "safety hazard" because he would not have enough time to react

12

should Basler threaten him.  Dkt. 42, Ex. B (Barron Dep.) at 41.  However, Basler contends that

Deputy Barron was motivated to confront him because of his desire to halt Basler from filming, an

accusation which is supported by the fact that Deputy Barron was aware of the filming.  Dkt. 64 at

1.  Further, Basler provides evidence that he was a safe distance away from the traffic stop.  Dkt. 64,

Ex. 5 (Tisdale Dep.) at 31.  The court has already determined that there is an underlying issue of

material fact about whether Deputy Barron had probable cause for the arrest.  The source of this is

an issue of material fact about Deputy Barron's motivation to order Basler away, whether it was an

actual issue of safety or an attempt to stop Basler from filming.  Deputy Barron's motivations depend

on the credibility of his testimony, supporting testimony, and the fact-finder's perception of the

circumstances.  When viewed in the light most favorable to Basler, Basler has alleged enough facts

to show that Deputy Barron's action may have been motivated by the filming, rather than by safety.

Therefore, the court cannot grant summary judgment for Deputy Barron on these grounds.

In the alternative, Deputy Barron also alleges that even had his order constrained Basler's free

speech rights, it was still a lawful content-neutral time and place restriction.  *Ward v. Rock Against*

*Racism,* 491 U.S. 781, 783, 109 S. Ct. 2746 (1989). Information gathering about government affairs

or matters of public concern—including recording police activity—is protected by the First

Amendment.  *E.g.*, *Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992) (assuming the

plaintiff's allegations were true, the court held that arresting the plaintiff for photographing a police

raid, in which he did not interfere, violated the plaintiff's First Amendment rights); *Shillingford v.*

*Holmes*, 634 F.2d 263, 264, 266 (5th Cir. 1981) (stating that a police officer's "unprovoked and

unjustified" assault of a plaintiff who "was photographing what the policeman did not want to be

memorialized" and "was not involved in the arrest incident and did not interfere with the police in

any fashion" established a deprivation of constitutional rights), *abrogated on other grounds by*

13

*Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993).  In light of these Fifth Circuit decisions, the court finds it impossible to conclude that a general police order to cease free speech activity, even if content neutral, becomes a lawful time and place restriction.

Here, Basler made factual allegations, when viewed in the light most favorable to him, that support his contention that he was engaged in a lawful free speech activity of filming and that the adverse action against him (i.e., the arrest) was motivated by that activity.  Therefore, Deputy Barron's motion for summary judgment on the free speech cause of action is DENIED.

**D.    Malicious Prosecution**

Finally, Basler claims that Deputy Barron engaged in malicious prosecution.  The Fifth Circuit has held those "causing charges to be filed without probable cause will not without more violate the Constitution." *Castellon v. Fridges*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).  If a plaintiff labels his claim "malicious prosecution" and invokes Texas state law elements for that claim, the  claim "invites confusion" and is not properly brought under § 1983. *Id.*  Consequently, a plaintiff may not bring "a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.2010).  "In *Castellano*, the Fifth Circuit held that the initiation of criminal proceedings without probable cause does not automatically give rise to a §1983 claim . . . . Rather, a plaintiff must show that officials violated specific constitutional rights in connection with a 'malicious prosecution'  in order to trigger the remedies of § 1983." *Gonzalez v. City of Corpus Christi Tex.*, No. CIV.A. C-10-321, 2011 WL 147741, at *3 (S.D. Tex. Jan. 18, 2011) (Jack, J.).

Basler's claim for malicious prosecution includes an accusation of an underlying violation of his Constitutional rights under the First and Fourth Amendments.  The court has already determined that whether violations of these rights occurred are disputes over material fact.

14

Therefore, the court cannot grant a motion for summary judgment in favor of either party for malicious prosecution. Deputy Barron and Basler's motions for summary judgment for malicious prosecution are both DENIED. Dkts. 42, 44.

## IV. BASLER'S § 1983 CLAIMS AGAINST HARRIS COUNTY

Basler asserts claims against Harris County based on municipal liability under theories of failure to train, failure to supervise, and negligent retention. Dkt. 16. Harris County moves for summary judgment on these causes of action. Dkts. 43. Basler moves for partial summary judgment on the failure to train and failure to supervise causes of action. Dkt. 44; Dkt. 64 at 7.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Municipalities and cities qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread practice, and © a violation of constitutional rights whose "moving force" is the policy or custom. *Id.* at 694; *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." ).

The court has already held that whether Basler's First and Fourth Amendment rights were violated is still open to a dispute of material fact on whether probable cause for the arrest existed. Therefore, the court will evaluate the cross motions for summary judgment by analyzing whether Basler met one of the remaining requirements of a claim for municipal liability by directly identifying an official policy, custom, or widespread practice or if he established such a policy exists through failure to train, failure to supervise, and negligent retention theories.

15

**A. Official Policy or Custom or Widespread Practice**

The Fifth Circuit defines official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris Cty. Hosp. Dist.*, 426 F.. App'x. 312, 316 (5th Cir. 2011) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). To meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the agency's policy. *Piotrowski*, 237 F.3d at 579. The plaintiff may also demonstrate an unwritten policy if he or she proves that a "final policymaker" took a single unconstitutional action. *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008).

"It is not sufficient for a plaintiff to allege, without elaboration, a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire*, 957 F.2d at 1278; *see also Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ("'[I]solated unconstitutional actions by municipal employees will almost never trigger liability.'") (quoting *Piotrowski*, 237 F.3d at 578).

Harris County observes that Basler's own complaint asserts "there was no policy, rule, regulation, ordinance or procedure" for police response when a civilian records their conduct. Dkt. 16. The court agrees. Basler provided no evidence in his briefings that Harris County had a policy

or procedure for preventing retaliation against civilians filming at the time the incident transpired. Failure to train must reflect a "deliberate" or "conscious" choice of Harris County for liability to attach. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S. Ct. 1197 (1989). The court finds that Basler's advancement of a conclusory argument that there was no policy and little training in place is not sufficient evidence to establish the lack of a policy was a deliberate or conscious decision on the part of Harris County.

Further, Basler fails to provide any evidence that Harris County deputy sheriffs retaliating against civilians is a widespread practice or custom. For a *Monnell* claim, the plaintiff must establish a widespread practice or custom by providing evidence of numerous similar incidents. *See Pineda v. City of Hou.*, 291 F.3d 325, 329 (5th Cir. 2002) (finding insufficient incidents to create enough evidence of a municipal custom of illegal conduct). Here, discovery is complete, and Basler has provided scant evidence regarding two instances of police possibly retaliating against a filming civilian: an internal affairs complaint from a filming incident in 2013 and the existence of a lawsuit arising from a filming incident in 2003. Dkt. 64, Ex. 1 (internal affairs report); *Ibarra v. Baker*, 338 F. App'x 457, 459 (5th Cir. 2009) (describing an underlying case that referenced video recording of police activity). Two incidents over the last decade, combined with Basler's incident, does not approach a reasonable threshold needed to provide evidence of a "widespread" practice. The court finds that Basler has not met his burden to provide evidence that there was a policy, custom, or widespread practice required for municipal liability.

**B.      Failure to Train, Failure to Supervise, and Negligent Retention.**

In the alternative, Basler also asserts that Harris County's failure to train, failure to supervise, and negligent retention amount to the policy.[2] Failure to train, failure to supervise, or negligent

---

[2] Harris County argues that Basler is improperly asserting a claim of negligence, when intentionality is required for this cause of action. Dkt. 43 at 8–9. The court agrees § 1983 requires intentional action. *Farmer v. Brennan*, 511 U.S. 825, 828–29, 114 S.Ct. 1979 (1994). Basler also agrees he is not asserting a negligence cause of action, and

supervision can amount to a policy for municipal liability.  *City of Canton*, 489 U.S. at 390.  An official not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under § 1983 if (1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005*)*; *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).  The third element of the test is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Estate of Davis*, 406 F.3d at 381.  Deliberate indifference is not satisfied with evidence of negligence or gross negligence, and requires more than erroneous decisions.  *Id.*

> Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.  The plaintiff must generally demonstrate at least a pattern of similar violations.  Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation.

*Thompson*, 245 F.3d at 459 (internal citations omitted).

*1.  Failure to Train*

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under [Section] 1983." *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir.2009) (citing *City of Canton*, 489 U.S. at 387.).  "The failure to train can amount to a policy if there is a deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort*

---

reaffirms his argument that his failure to train, failure to supervise, and negligent supervision theories are based on intentional conduct on the part of Harris County.  Dkt. 64 at 7.

*Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). "To demonstrate deliberate indifference, a plaintiff must show that 'in light of the duties assigned to specific officers or employees, need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (quoting *City of Canton,* 489 U.S. at 387) ("The failure to train must reflect a 'deliberate' or 'conscious' choice by a municipality.")  Usually, a plaintiff must demonstrate "at least a pattern of *similar incidents*" in order to demonstrate deliberate indifference. *Estate of Davis*, 406 F.3d at 383 (citations and internal quotations omitted).  These prior indications must "point to the specific violation in question"; the "specificity required should not be exaggerated, [but] the prior acts [must] be fairly similar to what ultimately transpired . . . ." *Id.*

Harris County provides a litany of undisputed evidence about the training Deputy Barron has received to perform his duties.  Deputy Barron is certified as a peace officer, takes the required twenty hours of training per year, and completed additional training on traffic stops. Dkt. 43, Ex. A (Barron Dep.) at 12–13, 16–19, Ex. H.  Deputy Barron also trains other officers on the safety risks associated with traffic stops. Dkt. 43, Ex. A (Barron Dep.) at 16–20.  Basler counters Harris County's evidence with a single undisputed allegation — that Deputy Barron does not remember the details of the training he received regarding free speech rights. Dkt. 43, Ex. A (Barron Dep.) at 23–25.

 However, even if Barron does not remember his training at all or the training was inadequate for his personal retention, that does not serve as evidence to show a pattern of "similar incidents" required to demonstrate Harris County's widespread indifference.  Deliberate indifference requires actual knowledge and conscious disregard of the risk of harm to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).

19

The only allegation Basler makes that Harris County had actual knowledge to meet the deliberate indifference standard is an allegation of the popularity of the 1991 Rodney King video and two Fifth Circuit decisions also from over two decades ago. Dkt.44 at 20, Ex. 1. The Rodney King incident took place across the country and is not factually similar to Basler's case other than it involved a civilian filming the police. Even assuming that Harris County had knowledge of these events, the court would have to make a substantial inference without any evidence from Basler, that mere knowledge of these events gives rise to a conclusion that Harris County was deliberately indifferent and consciously disregarded any risk that there might be retaliation for filming which can be rectified through additional training for the police. Therefore, the court concludes that Basler failed to provide the evidence required to establish failure to train was a policy of the department.

*2. Failure to Supervise and Negligent Retention*

To hold a supervisor liable under § 1983, a plaintiff must show that the conduct of the supervisor violated the constitutional rights of a party, not merely that a supervisor's subordinate violated the rights of a party. *Goodman,* 571 F.3d at 395. Basler argues that Harris County has received complaints from other civilians about Deputy Barron and that those complaints demonstrate that Harris County failed to supervise Deputy Barron and negligently retained him as a peace officer despite these complaints. Dkt. 16. However, Basler provided no evidence in support of those allegations. Dkt. 43 at 13. During his deposition, Basler stated "I'm not aware of any facts" that support his claim that Harris County negligently supervised Deputy Barron. Dkt. 43, Ex. C (Basler Dep.) at 101. Likewise, Basler stated he was not aware of any civilian complaints against Deputy Barron. *Id.* at 102–103. Basler claims that there are still open issues of material fact regarding Deputy Barron's disciplinary record. Dkt. 64 at 7. Discovery in this matter is complete and Basler has provided no additional evidence from the disciplinary record in his response. The court finds

there are no open issues of material fact regarding Deputy Barron's disciplinary history.  Therefore, the court concludes that Basler failed to provide the evidence that there were complaints against Deputy Barron, or that Harris County failed to supervise or negligently retained Deputy Barron.

Basler failed to establish a policy or practice of the department as a written policy, through widespread custom or practice, or through a failure to train, failure to supervise, or negligent supervision theories.  Therefore, Basler has not met his burden of showing there is an issue of material fact as to the "policy" element required for municipal liability.  Basler's motion for partial summary judgment is DENIED, and Harris County's motion for summary judgment is GRANTED with regard to Basler's claims against Harris County for municipal liability on these theories.

### V.  BASLER'S PRIVACY PROTECTION ACT CLAIMS AGAINST DEPUTY BARRON

Basler asserts a cause of action against Deputy Barron for the seizure and destruction of a journalistic work product in violation the Privacy Protection Act ("PPA").  42 U.S.C. § 2000aa; Dkt. 16 at 11.  Basler and Deputy Barron filed cross motions for summary judgment on this cause of action.  Dkts. 42, 44.  The PPA makes it:

> Unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a *person reasonably believed to have a purpose to disseminate to the public* a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if . . . there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate . . .

42 U.S.C.A. §2000aa (emphasis added).

As a preliminary matter, there is no dispute that Deputy Barron seized Basler's cell phone during his arrest.  Dkt. 42 at 8; Dkt. 44, Ex. 13.  Basler, however, also alleges that the video recordings he made were deleted in whole or in part by the police, a fact which Deputy Barron

disputes.  Dkt. 62, Ex. 1 (Barron Dep.) 14–15.  Nevertheless, the court finds this disputed fact is not material to this cause of action.  The cause of action arises from mere seizure of the work product, which undisputedly occurred when Basler's cell phone was confiscated during his arrest..

The first question for the court is whether Basler is protected by the PPA.  Deputy Barron argues that Basler is not protected by this act because he is not a professional journalist, and thus his work product is not protected.  Dkt. 16; Dkt. 42 at 7–8, Ex. D (Basler Dep.) at 68, 115.  Basler is an arborist by profession, but has been a contributor to internet publications that are critical of the police. *Id.*  The PPA, however, does not specify that it only protects professional journalists.  PPA protects "work product . . . [made by] a person reasonably believed to have a purpose to disseminate to the public . . ."  The Fifth Circuit has only opined on this law twice, and neither case presented an analogous fact pattern. *See Crenshaw-Logal v. City of Abilene, Tex.*, 436 F. App'x 306, 308 n.2 (5th Cir. 2011) (noting that Crenshaw-Logal was not asserting a claim under the PPA); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 459 (5th Cir. 1994) (asserting a PPA cause of action when the Secret Service seized, among other contents stored on a computer, a book intended for publication); *see also Mink v. Suthers*, 482 F.3d 1244, 1249 (10th Cir. 2007) (dismissing, on other grounds, the PPA claims of a student who runs an internet journal; the court did not comment on whether his work was covered by the PPA).

Deputy Barron argues that the only "work product" that could be produced by Basler are those related to his profession as an arborist.  Dkt. 42 at 8.  However, PPA defines "work product" broadly as materials created, among other requirements, ". . . in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person."  42 U.S.C.A. § 2000aa(7).  This definition also helps the court conclude that the creator of the material does not have to be a professional journalist because the

language disregards who possesses the material and merely defines the material as being produced in "anticipation" of public communication.

Deputy Barron states that he is fully aware of web sites where civilians disseminate films of police activity to the public.  Dkt. 42 at 3; Dkt. 62, Ex. 1 (Barron Dep.) at 23 (admitting he is aware that cell phone videos of the police are posted to the Internet while refusing to opine on Basler's motives).  Seeking to discredit Basler's motives, Deputy Barron points out Basler's involvement in the CopBlock.com public and online community and cites to Basler's previous publications on that site.  Dkt. 42 at 3, 11; Ex. D (Basler Dep.) at 40–41, 47.  Deputy Barron has not advanced any alternative argument or evidence that Basler had another purpose for filming besides disseminating the film to the public.  The court finds that there is no reasonable dispute about the purpose of Basler's filming.  *Id*.  Here, the court finds that Deputy Baron likely knew or had reason to know that Basler was filming him for the purpose of disseminating the film to the public via public communication (in this case, the Internet) and that any video contained on the seized cell phone was indeed work product under the definition of the PPA.

The second question, however, is whether the seizure is still permitted pursuant to the "applicable law" and "probable cause" exception in the second provision of the PPA.  42 U.S.C.A. §2000aa.  The PPA allows an exception for the seizure of a journalistic work product if there "is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate."  *Id*.  Therefore, whether Basler has a cause of action under the PPA depends on if this exception applies.  Knowing Basler was filming, Deputy Barron claims that there may have been evidence recorded on the phone of Basler's interference with his public duties.  Dkt. 62, Ex. 2 (Barron Dep.) at 11.  This makes sense if Basler was recording the entire sequence of events leading up to his arrest.  If the arrest occurred with probable cause, the

23

seizure of the cell phone may be allowed under the PPA pursuant to the exception allowing a seizure during a lawful arrest.

Because the court concludes Basler's filming may be protected activity under the PPA, but there is an issue of material fact as to probable cause that may make the exception for seizure of the cell phone applicable, both Deputy Barron and Basler's motions for summary judgment on this cause of action (Dkts. 42, 44) are DENIED.

## VI. Conclusion

Deputy Barron's motion for summary judgment (Dkt. 42) is DENIED.

Harris County's motion for summary judgment (Dkt. 43) is GRANTED.

Basler's motion for partial summary judgment (Dkt. 44) is DENIED.

Signed at Houston, Texas on February 6, 2017.

Gray H. Miller
United States District Judge