United States District Court
Southern District of Texas
**ENTERED**
March 01, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GENE GERALD BASLER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2254 |
| | § | |
| DEPUTY ERIK LANCE BARRON, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER

In light of the Fifth Circuit's decision in *Turner v. Lieutenant Driver*, No. 16-10312, 2017 WL 650186 (5th Cir. Feb. 16, 2017), the court *sua sponte* reconsiders its order (Dkt. 24) denying defendant Deputy Erik Lance Barron's ("Deputy Barron") motion to dismiss (Dkt. 18) plaintiff Gene Gerard Basler's second amended complaint (Dkt. 16) with respect to Basler's First Amendment claim. The court gave the parties notice that it intended to *sua sponte* reconsider its order and both parties filed supplemental briefings. Dkts. 91, 94, 95. Having considered the motion, response, the supplemental briefings, and applicable law, the court is of the opinion that Deputy Barron's motion to dismiss should be GRANTED in part with respect to Basler's First Amendment claim. Dkt. 18. Basler's First Amendment claim against Deputy Barron is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Basler alleges that his civil rights were violated in conjunction with his arrest on June 20, 2014. Dkt. 16. On that afternoon, Deputy Barron, a deputy sheriff for Harris County, set up a static traffic stop in the U-turn area of the 18500 Tomball Parkway at Grant Road in Harris County. *Id*. at 4. Basler was filming the traffic stop with his mobile phone when Deputy Barron ordered him to move further away multiple times and Basler refused the orders. *Id*. at 6–7. Deputy Barron claims

that he arrested Basler for interfering with his official duties by standing too close to the traffic stop and failing to comply with his commands.  Dkt. 18 at 3.  Basler alleges that the reason Deputy Barron arrested him was to prevent his filming either of the traffic stop or in retaliation for his filming.  Dkt. 16 at 10.

On August 5, 2015, Basler filed a complaint against defendants Deputy Barron, Harris County, and Harris County Sheriff Ron Hickman.  Dkt. 1.  Basler amended his complaint on October 15, 2015 and again on December 31, 2015.  Dkts. 7, 16.  On January 14, 2016, Deputy Barron filed a motion to dismiss the claims against him in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 18.  On April 27, 2016, the court dismissed Basler's state law claims, but retained Basler's claims under 42 U.S.C. § 1983 for unreasonable seizure, excessive force, violation of freedom of speech, and malicious prosecution, and under the Privacy Protection Act (42 U.S.C. § 2000aa) for the destruction of a journalistic work product.  Dkt. 24.  On July 27, 2016, Deputy Barron and Basler filed cross motions for summary judgment.  Dkts. 42, 44.  Deputy Barron moved for summary judgment on all the claims against him, including the freedom of speech claim, but Basler's partial motion for summary judgment did not include the freedom of speech claim.  *Id.* On February 6, 2017, the court denied both Basler and Deputy Barron's motions for summary judgment.[1]  Dkt. 82.

On February 16, 2017, the Fifth Circuit issued the *Turner v. Lieutenant Driver* decision, which upheld a district court's decision to dismiss a § 1983 freedom of speech claim in a police filming incident on the basis of qualified immunity.  2017 WL 650186.  In light of *Turner*, the court

---

[1] Co-defendants Harris County and Sheriff Ron Hickman also moved for summary judgment. Dkt. 43.  The court granted summary judgment in favor of Harris County and Sheriff Hickman and Basler's claims against them were dismissed.  Dkt. 82.

issued notice of its intent to *sua sponte* reconsider its decision to deny Deputy Barron's motion to dismiss Basler's freedom of speech claim.  Dkt. 91.  The parties filed supplemental briefings. Dkts. 94, 95.

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555.

As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps.  First, the court separates legal conclusions from well-pled facts.  *Iqbal*, 556 U.S. at 678–79.  Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief."  *Id.* at 679.   Though a defendant can seek dismissal on an affirmative defense, dismissal will be granted only if the defense is "established by the face of the complaint."  *Janvey v. Suarez*, 978 F. Supp. 2d 685, 702 (N.D. Tex. 2013).  For example, a statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

3

A court may dismiss a claim on its own motion "as long as the procedure employed is fair." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Fairness requires notice of the court's intention and opportunity to respond. *Id.* (citing *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007)). Here, the court gave notice of its intention to perform a *sua sponte* reconsideration of Deputy Barron's motion to dismiss Basler's First Amendment claim and both parties had the opportunity to respond. Dkts. 91, 94, 95.

## III. ANALYSIS

Deputy Barron asserts that Basler's § 1983 claims fail as a matter of law because Basler did not allege facts that waive Deputy Barron's qualified immunity. Dkt. 18 at 3 (citing *Ashcroft*, 563 U.S. at 735). For a plaintiff to state a claim under § 1983, he "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005). Public officials sued in their personal capacity for monetary damages under § 1983 may be able to assert a common-law defense of absolute or qualified immunity from suit. *Imbler v. Pachtman*, 424 U.S. 409, 418–19, 96 S. Ct. 984 (1976). "When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating the inapplicability of that defense." *Turner*, 2017 WL 650186, at *3 (citing to *Atteberry*, 430 F.3d at 253).

Qualified immunity shields federal and state officials from civil damage liability under § 1983 in their individual capacities unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735; *see also Ramirez v. Martinez*, 716 F.3d 369, 375

4

(5th Cir. 2013).  Of these two prongs, courts "have the discretion to decide which prong of the qualified immunity analysis to address first."  *Turner*, 2017 WL 650186, at *3.

In denying Deputy Barron's motion on the grounds of qualified immunity, this court analyzed the second prong and concluded that filming the police is a clearly established First Amendment right.  Dkt. 24 at 16.  However, later, in *Turner*, the Fifth Circuit noted divergent district court opinions in analyzing the second prong of the qualified immunity defense in determining whether filming the police is a "clearly established right."  *Turner*, 2017 WL 650186, at *4, n.33.  The Fifth Circuit's holding in *Turner* is directly applicable to Deputy Barron's assertion of a qualified immunity defense against Basler's First Amendment claim.  *Id.*  In light of *Turner*, the court reconsiders the second prong of the qualified immunity analysis.  *Id.*

In *Turner*, the plaintiff, Phillip Turner, filmed the Fort Worth police station from a public sidewalk and he was detained for questioning after refusing to identify himself.  *Id* at *2.  Turner sued the two police officers who detained him, alleging violations of his First and Fourth Amendment rights under § 1983.  *Id.*  The defendants moved to dismiss Turner's claims under Rule 12(b)(6), asserting a qualified immunity defense.  *Id.*  The Fifth Circuit reasoned that the court "must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'"  *Id.* at *7 (quoting *Ashcroft*, 563 U.S. at 732).  The Fifth Circuit held that:

> We cannot say, however, that "existing precedent . . . placed the . . . constitutional question beyond debate" when Turner recorded the police station.  Neither does it seem that the law "so clearly and unambiguously prohibited [the officers'] conduct that 'every reasonable official would understand that what he is doing violates [the law].'"  In light of the absence of controlling authority and the dearth of even persuasive authority, there was no clearly established First Amendment right to record the police at the time of Turner's activities.  All three officers are entitled to qualified immunity on Turner's First Amendment claim.

*Id.* at *4 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

The Fifth Circuit concluded: "*At the time in question*, neither the Supreme Court nor this court had determined whether First Amendment protection extends to the recording or filming of police." *Id.* at *3 (emphasis added). The Fifth Circuit also opined that, though the right to film the police was not clearly established at the time of Turner's 2015 arrest, it is established "henceforth." *Id.* at *4.

Like the police officers in the *Turner* case, Deputy Barron asserted the defense of qualified immunity in his motion to dismiss. Dkt. 18 at 3. Basler responded that the right to film the police is a "clearly established" First Amendment right. Dkt. 21 at 8. Basler was arrested in 2014, prior to Turner's 2015 arrest and prior to the Fifth Circuit's 2017 decision in *Turner*. Applying the Fifth Circuit's reasoning in *Turner*, the court concludes that First Amendment right to film the police was not clearly established "at the time" of Basler's arrest. *Turner*, 2017 WL 650186, at *4*.

The court now turns to addressing Basler's three arguments against applying the *Turner* holding to his case: (1) The two cases are dissimilar because Basler had a statutory defense of freedom of speech for the offense of interference with public duties; (2) Deputy Barron did not assert a qualified immunity defense with respect to filming; and (3) The facts of Basler's case should be viewed with more particularly. Dkt. 95 at 2–4.

First, Basler argues that his arrest is distinguished from Turner's because Basler was accused of interference with public duties, which contains a statutory "speech only" defense. Dkt. 95 at 3 (citing to Texas Penal Code § 38.15(d)). Unlike in his case, Basler argues that Turner had no First Amendment right to refuse to identify himself. *Id*. However, this argument does not does not negate Basler's burden to show that the right that he alleges that Deputy Barron violated was clearly established at the time of his conduct. *Ashcroft*, 563 U.S. at 735. The relevant issue here is not

Basler's right to freedom of speech, but whether filming the police was a clearly established exercise of Basler's free speech rights at the time of his arrest. The reasoning in *Turner* makes clear that in 2014 filming the police was not clearly established as an exercise of a First Amendment free speech right.

Second, Basler argues that Deputy Barron's qualified immunity defense, with respect to filming, is a new defense that was not raised in his motion to dismiss. Dkt. 95 at 2. In Deputy Barron's motion to dismiss, he properly raised a qualified immunity defense against all the claims against him. Dkt. 18 at 3 (arguing that Basler's claims should be dismissed because "[t]o prevail on such claim, Plaintiff must allege facts that waive Deputy Barron's qualified immunity"). Additionally, Deputy Barron has maintained the qualified immunity defense through his briefing for the upcoming trial on this matter. Dkt. 84, Ex. F at 1–2. Therefore, the court does not agree with Basler's argument that Deputy Barron failed to raise a defense of qualified immunity or that the court is "unilaterally" adding a defense outside of the four corners of the motion to dismiss. Dkt. 95 at 2.

Though the court finds that qualified immunity is not a new defense, it is true that Deputy Barron did not argue that there was no clearly established right to film the police when asserting his defense of qualified immunity. Dkts. 18; 95 at 5–6. To the extent that this raises a "new" defense, even Basler points out that failure to raise a defense is "not fatal" when the defense is offered with "pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Arismendez v. Nightingale Home Health Care, Inc.,* 493 F.3d 602, 610–11 (5th Cir. 2007) (quoting *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)); Dkt. 95 at 2. Here, Basler's response to Deputy Barron's motion to dismiss included his argument in support of filming as a "clearly established right," and the court addressed this argument it in its opinion. Dkt. 21 at 8; Dkt. 24 at 6. Additionally, both parties were given the opportunity to offer supplemental briefings in light of

the *Turner* decision. Dkt. 91. The court finds that Basler had notice of the existence of this defense, had ample opportunity to respond, and therefore Basler was not prejudiced in his ability to respond.

Third, Basler argues that the court should apply the law "particularized" to the facts of this case, rather than with a "high level of generality." Dkt. 95 at 4 (quoting *Turner*, 2017 WL 650186, at *6). Specifically, Basler argues that his motivation for filming Deputy Barron was out of concern for a motorist's safety, which is unlike Turner's filming of a police station for no apparent reason. Dkt. 95 at 5. The court agrees these divergent motivations do implicate different public policy considerations with respect to filming police. However, the court returns to the second prong of the qualified immunity analysis, and filming with a motivation for public safety does not establish a waiver of Deputy Barron's qualified immunity. The second prong requires Basler to make a showing that the right to film the police was a "clearly established right" at the time of the filming. An arguably valid public policy concern regarding police behavior does not create a clearly established right to film the police where there was otherwise none.

Based on the *Turner* decision, the court finds that Deputy Barron is entitled to qualified immunity because, at the time of Basler's arrest in 2014, the right to film the police was not a "clearly established right" under the First Amendment. Basler has not met his burden of showing that he is entitled to a waiver of Deputy's Barron's qualified immunity with respect to the First Amendment claim. Therefore, the court reconsiders its original order and concludes that Basler's First Amendment claim against Deputy Barron should be DISMISSED.

### IV. CONCLUSION

Deputy Barron's motion to dismiss Basler's First Amendment claim on the basis of qualified immunity is GRANTED. Basler's First Amendment claim against Deputy Barron is DISMISSED WITH PREJUDICE. It is further ORDERED that defendant's emergency motion to stay proceedings (Dkt. 97) is DENIED AS MOOT.

Signed at Houston, Texas on March 1, 2017.

_____

Gray H. Miller
United States District Judge